**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL R.-S., | |
|           Petitioner, | Civil Action No. 20-3175 (CCC) |
| v. | **OPINION** |
| WILLIAM J. ANDERSON, et al., | |
|           Respondents. | |

**CECCHI, District Judge.**

Presently before the Court are the motions of Petitioner Daniel R.-S. ("Petitioner") seeking the entry of a temporary restraining order and an order to show cause granting his release from immigration detention in light of the COVID-19 crisis. ECF Nos. 3, 5. The Government filed opposition to the motions (ECF Nos. 12–13), to which Petitioner replied (ECF Nos. 14–15, 19). Additional submissions have also been filed updating the Court on the developing circumstances of the case and relevant supplemental authority. ECF Nos. 23–24, 26–28, 30–34. The Court held telephonic conferences with the parties on April 13 and 15, 2020, and a telephonic hearing on April 21, 2020. For the following reasons, Petitioner's motions are **DENIED**.

**I. BACKGROUND**

Petitioner is a native and citizen of El Salvador who illegally entered the United States in June 2013 at age fifteen, as an unaccompanied minor. ECF No. 12-2 at 3. Petitioner was arrested by a border patrol agent in Texas, and on July 3, 2013, the Office of Refugee Resettlement released him into the custody and care of his mother, who lived in New York. ECF No. 6-2. Following Petitioner's several arrests and evidence suggesting he was a member or associate of MS-13,

1

Petitioner was taken into immigration custody pursuant to 8 U.S.C. § 1226(a) and placed in removal proceedings on September 29, 2017, two years after his eighteenth birthday. ECF No. 12-2 at 3–4. On October 1, 2018, Petitioner was ordered removed by an immigration judge. Petitioner filed applications for relief from removal as a bisexual man fearing persecution in El Salvador, which were denied. ECF No. 12-4. Petitioner appealed, but the Board of Immigration Appeals dismissed his appeal and entered a final order of removal on March 27, 2019. ECF No. 12-5. Petitioner thereafter filed a petition for review and a motion for stay of removal before the Court of Appeals for the Second Circuit. *See* ECF No. 6-5. The Second Circuit granted the stay on October 24, 2019, and the petition for review remains pending. *Id.* Upon the Second Circuit's grant of Petitioner's stay of removal, Petitioner's detention reverted to pre-final order of removal status and he resumed being held under the Government's discretionary authority. *See* 8 U.S.C. § 1226(a). Petitioner subsequently requested and received a bond hearing, and bond was denied by an immigration judge on February 25, 2020 as Petitioner failed to meet his burden of showing that he was not a danger to the community in light of his criminal history and gang affiliation.[1] ECF No. 12-6. Petitioner has remained detained pursuant to 8 U.S.C. § 1226(a) since that time.

Petitioner seeks immediate release from the Essex County Correctional Facility ("ECCF" or "the jail"), arguing that his detention is unlawful based on his entering into this country as an unaccompanied minor, that he cannot effectively communicate with his counsel, and that his detention violates substantive due process under the present circumstances stemming from a global

---

[1] Petitioner denies any affiliation with MS-13 and contends that the immigration judge erred in concluding that he has any association with the gang. ECF No. 4 at 5. Petitioner argues that the same immigration judge that denied him bond, based in part on his gang association, previously found that he credibly denied any involvement with MS-13. ECF No. 14 at 3 n.3. The Government has pointed to Petitioner's I-213 Record of Deportable/Inadmissable Alien form which contains assertions of Petitioner's connection to MS-13. ECF No. 12-2.

pandemic of an infectious disease known as COVID-19. ECF No. 4 at 3. COVID-19 is a novel, highly contagious virus that can cause severe lung damage leading to permanent respiratory issues or death. Id. at 2. The virus has spread rapidly in New Jersey and the Governor of New Jersey declared a state of emergency to contain the virus on March 9, 2020. Id. at 6. COVID-19 is particularly dangerous in close quarters as it can spread through air droplets, it can be carried by persons who do not display any symptoms of illness, and there are no definitive treatments or vaccines available at this time. As of May 8, 2020, New Jersey had approximately 133,635 positive tests for COVID-19 and 8,801 deaths from the virus. COVID-19 Information Hub, STATE OF NEW JERSEY, https://covid19.nj.gov/ (last visited May 8, 2020).

Petitioner is a healthy twenty-two-year-old with no pre-existing medical conditions, but asserts that he is at a heightened risk of contracting COVID-19 because he contends his cellmate displayed symptoms of the virus and other detainees are symptomatic as well. ECF No. 4 at 6; ECF No. 15 at 4–5. Petitioner also argues that given the high rate of infection among guards at ECCF with whom he interacts, he is in danger of contracting the virus. ECF No. 26 at 1–2.

## II. DISCUSSION

### A. Legal Standard

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Novartis Consumer Health v. Johnson & Johnson – Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (citation omitted). In order to establish entitlement to injunctive relief in the form of a temporary restraining order, the moving party must:

> demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants; and (4) granting the injunction is in the public interest." *Maldonado v. Houston*, 157 F.3d 179, 184 (3d Cir. 1998) (as to a preliminary injunction); *see also Ballas v. Tedesco*, 41 F. Supp. 2d 531, 537 (D.N.J. 1999) (as to

> temporary restraining order).  A plaintiff must establish that all four factors favor preliminary relief.  *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187 (3d Cir. 1990).

*Ward v. Aviles*, No. 11-6252, 2012 WL 2341499, at *1 (D.N.J. June 18, 2012).  Petitioner, as the party seeking a temporary restraining order, must first demonstrate a "reasonable probability of eventual success in the litigation." *Bennington Foods, LLC v. St. Croix Renaissance Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citation omitted).  To satisfy this requirement, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that [he] will prevail on the merits." *Ward*, 2012 WL 2341499 at *2 (quoting *Oburn v. Shapp*, 521 F.2d 142, 148 (3d Cir. 1975) (quotation marks omitted).

To the extent that Petitioner's requested relief is immediate release from detention, the Third Circuit has, in the past, authorized a district court reviewing a state court conviction via a habeas corpus petition to enter an order granting bail pending resolution of the petitioner's habeas claims. *See, e.g.*, *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986).  In *Lucas*, the Court of Appeals recognized that federal courts hearing habeas petitions brought by state prisoners have the "inherent power . . . to admit a state petitioner to bail pending a ruling on the claims asserted in [his habeas] petition," but also noted that this power should only be exercised sparingly. *Id.* at 367. The Third Circuit therefore concluded that likelihood of success on the merits alone will not suffice to warrant release on bail pending habeas review, and a petitioner seeking review must instead show that he faces "extraordinary" or "exceptional" circumstances which warrant treating him differently than others so confined. *Id.* at 367–68.  Although the Third Circuit did not define what constituted an "extraordinary circumstance," it did recognize that one such circumstance was presented in *Johnston v. Marsh*, 227 F.2d 528 (3d Cir. 1955), in which a habeas petitioner

4

requested bail because he was extremely ill and sought release to enter a hospital for treatment unavailable in prison. *Id.* at 366–68.

**B. Analysis**

Petitioner puts forth three purported bases for relief: (1) that the Department of Homeland Security did not place Petitioner, who entered the country as an Unaccompanied Alien Child ("UAC"), in the "least restrictive setting," allegedly in violation of his rights under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"); (2) that Petitioner's right to counsel in his removal proceedings is being infringed on by the current jail restrictions impacting confidential and effective communications with counsel; and (3) that Petitioner's ongoing detention pursuant to 8 U.S.C. § 1226(a) violates his due process rights because he fears he may eventually contract COVID-19. For the reasons expressed below, the Court concludes that Petitioner has failed to show that he is likely to succeed on the merits of these three claims and will therefore deny Petitioner's motions for a temporary restraining order and for an order to show cause.

     **i.**      **The Trafficking Victims Protection Reauthorization Act Claim**

With respect to his TVPRA claim, Petitioner argues that he should be released as the Government was required under the TVPRA to consider placing him in the least restrictive setting before placing him in confinement in a county jail. ECF No. 4 at 23. The Government, in turn, argues that the TVPRA does not apply to Petitioner as he ceased to be a UAC once he was transferred into the custody of his mother in the United States prior to his eighteenth birthday (at age fifteen). ECF No. 12 at 19. A similar argument was raised in *Jose L.P. v. Whitaker*, No. 18-17176, 2019 WL 8138422, at *2–9 (D.N.J. Sept. 24, 2019). In that case, following an exhaustive examination of the statutory text, the court concluded that the protections of 8 U.S.C. § 1232(c),

5

which Petitioner invokes here, apply only to those who (1) qualify as UACs, (2) reach the age of eighteen while continuing to so qualify, and (3) are transferred "to the custody of the Secretary of Homeland Security" at age eighteen. *Id.* at *5. To qualify as a UAC, an alien must have no lawful immigration status, be under eighteen years old, and must either have no parent or guardian in the United States or have no such parent or guardian who is available to provide care and physical custody to the child. *Id.* at *6 (citing 6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(g)). Based on these statutory requirements, the court in *Jose L.P.* ruled that once an individual is released from government custody into the custody and care of a parent, he no longer qualifies as a UAC under the statute. *Id.* at *6–7. Section 1232(c) only applies where an alien is still a UAC when he reaches the age of eighteen and is "transferred to the custody of the Secretary of Homeland Security." *Id.* at *7–9. Accordingly, the court in *Jose L.P.* concluded that an alien who is released to a parent's custody prior to turning eighteen is not entitled to the protection of § 1232(c) as he is no longer a UAC at that point and will not be transferred into the custody of DHS when he turns eighteen. *Id.* at *7–9; *see also id.* at *7 ("The obvious humane purpose of § 1232 is to provide a backstop for the needs of a child who lacks a parent or guardian in the United States. To find that a child remains legally 'unaccompanied' despite being placed in the care of a parent would contravene both the plain language and the evident intent of § 279 and § 1232.").

The Court agrees with the analysis set forth in *Jose L.P.* An alien, like Petitioner, who is released into his mother's custody prior to attaining the age of eighteen ceases to be a UAC, and does not qualify for the protections of § 1232(c) as he is never "transferred" into DHS custody upon his eighteenth birthday. Petitioner therefore was not entitled to placement in the "least restrictive" setting upon his later being taken into custody and placed into removal proceedings, after he turned eighteen in the custody of his mother. *Id.*; *see also Ramirez v. Decker*, No. 19-

11012, 2020 WL 1674011, at *6–10 (S.D.N.Y. Apr. 3, 2020) (citing *Jose L.P.* and reaching the same conclusion that a UAC who reaches the age of eighteen in the custody of a parent ceases to be a UAC and loses his entitlement to the "least restrictive" placement requirement).  Petitioner is lawfully subject to detention in a facility such as the county jail in which he is detained pursuant to 8 U.S.C. § 1226(a).  As Petitioner has received a bond hearing under § 1226(a), Petitioner's detention under the statute is constitutionally permissible and Petitioner has not shown a likelihood of success on this claim.[2]

### ii. Ability to Confer with Counsel

In his next claim, Petitioner initially contended that the combination of New York State's requirement that its citizens (including Petitioner's counsel) shelter in place and restrictions at ECCF hampered Petitioner's ability to confer with his counsel.  Petitioner, however, has been able to speak to his counsel since filing his motion for injunctive relief (*see* ECF No. 15 at 4) and the jail has taken additional steps to ensure its detainees are able to communicate with counsel through video conferencing and private phone calls (*see* ECF No. 23-1 at 7).  Petitioner now more particularly asserts that he is unable to communicate confidentially with his attorneys which hinders their ability to represent him effectively.[3]  ECF No. 26 at 3–4.  In response, the Government contends that "ECCF facilitates confidential telephone calls between detainees and inmates and

---

[2] In a recent letter, Petitioner informed the Court that he has re-opened his Special Immigrant Juvenile Status ("SIJS") application and will, in short order, be seeking to reopen proceedings on that application before the Board of Immigration Appeals.  While the reopening of this application and Petitioner's intent to file a motion to reopen may eventually result in a pathway to permanent resident status and eventual freedom from immigration detention, the reopening of the SIJS application has no effect upon his current detention unless and until the immigration courts take action in light of the reopened application. *See generally Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153 (3d Cir. 2018).

[3] The parties have supplemented the record and presented updated arguments to reflect evolving circumstances at ECCF including accommodations made for legal communications. *See* ECF Nos. 23–24, 26–28, 30, 32–34.

their attorneys," that "every housing area has a set of tablets that inmates and detainees can use to make telephone calls," and that "detainee[s] can use headphones while speaking with their attorney." ECF No. 34-2 at 7.  Given that Petitioner himself acknowledges that these limitations have been put in place to aid in preventing further COVID-19 cases, that Petitioner has been able to speak with counsel, and in light of the continuing steps that ECCF is taking to ensure confidential communications with counsel, Petitioner has failed to show that he is likely to succeed on his request for release based on issues pertaining to access to counsel at this time.

### iii.     COVID-19

Turning to Petitioner's COVID-19 claim, he contends that he should be released from immigration detention because he fears he may contract COVID-19 and believes that the jail's policies for dealing with the virus are insufficient to protect him from the disease.  Petitioner argues that the Court has the inherent power to order his immediate release because he "is deprived of safe conditions and adequate care for his conditions, which cannot be remedied."  ECF No. 4 at 28 (citing *Johnston v. Marsh*, 227 F.2d 528, 531 (3d Cir. 1955); *Mapp v. Reno*, 241 F.3d 221, 223 (2d Cir. 2001); *Leslie v. Holder*, 865 F. Supp. 2d 627, 634–35 (M.D. Pa. 2012)).  Petitioner asserts that he is subject to unsafe conditions at ECCF in violation of his constitutional rights as COVID-19 has already spread among ECCF staff, that ECCF has "documented deficiencies in hygiene and medical care," and that "[c]ongested environments allow for the rapid spread of infectious diseases." Id. at 19; ECF No. 26 at 1–2.  Petitioner specifically alleges that he is being housed in a cell with another detainee who had shown symptoms of COVID-19 and that there are a number of symptomatic detainees and guards in the facility. ECF No. 15 at 4–5, ECF No. 26 at 1–2.

The Government responds that Petitioner's motion for injunctive relief in connection with a habeas petition is an improper procedural vehicle to address his claims. ECF No. 12 at 11.  The

Government asserts that Petitioner's disagreement with the jail's attempts to deal with COVID-19 "do[es] not rise to the level of a constitutional violation warranting immediate release, and [is] not cognizable in habeas." Id. at 18. The Government further contends that "Petitioner alleges no other particularized or concrete injury resulting from the potential spread of COVID-19 at ECCF," and that any assertions regarding his cellmate's health are not borne out by the record. Id. at 28.

Although the Government argues that Petitioner cannot assert his conditions of confinement and medical condition claims through a writ of habeas corpus (*see* id. at 27), the Third Circuit and other federal courts have seemingly condoned conditions of confinement challenges through habeas. *See Aamer v. Obama*, 742 F.3d 1023, 1032 (D.C. Cir. 2014); *see also Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 242–44 (3d Cir. 2005); *Ali v. Gibson*, 572 F.2d 971, 975 n.8 (3d Cir. 1978). Additionally, the Supreme Court has not foreclosed challenges to conditions of confinement through a petition for a writ of habeas corpus. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1863 (2017) ("The Court need not determine the scope or availability of the habeas corpus remedy."); *Bell v. Wolfish*, 441 U.S. 520, 526, n.6 (1979) ("[W]e leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement."); *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making custody illegal."). In light of the above-mentioned decisions allowing habeas challenges to conditions of confinement, the Court's authority to exercise jurisdiction over a habeas petition from a detained individual alleging violations of his constitutional rights under 28 U.S.C. § 2241, and decisions from courts around the country that

have considered the significant issues this pandemic poses to prisoners and detainees,[4] the Court will consider Petitioner's claim that his exposure to COVID-19 constitutes a violation of his substantive due process rights.

Petitioner has not alleged that he suffers from COVID-19, has not identified any pre-existing condition that would render COVID-19 an extreme threat to him specifically, and is not in the age category considered at high risk of serious complications from COVID-19. Instead, Petitioner's main contention is that he is vulnerable to COVID-19 as he is being housed in a cell with another detainee who had shown symptoms of COVID-19 and has interacted with detainees and guards who may have the disease, but were not symptomatic. ECF No. 15 at 4–5, ECF No. 26 at 1–2. Petitioner also states that symptomatic detainees have not been provided with sufficient supplies of masks or protective gear. ECF No. 15 at 5. As to the status of Petitioner's cellmate, the Government reports that "Petitioner's cellmate put in a sick call on April 1, 2020. He was evaluated by the medical staff on April 2, 2020 and did not display a fever or any other symptoms of COVID-19 or any other illness. As of April 16, 2020, ICE represents that ECCF has not received any sick calls since his request on April 1, 2020." ECF No. 27 at 2. With respect to ECCF's broader population, based on the record before the Court there are currently three immigration detainees who have tested positive for COVID-19 and five inmates in a separate

---

[4] These unique habeas challenges have proliferated in recent weeks during the COVID-19 pandemic and have been considered on their merits by judges in this Circuit and throughout the federal judiciary. *See, e.g.*, *Cristian A.R. v. Decker*, No. 20-3600, at 17 (D.N.J. Apr. 12, 2020) ("[T]his Court finds that Petitioners may challenge their conditions of confinement through a 28 U.S.C. § 2241 petition for writ of habeas corpus."); *Ousman D. v. Decker*, No. 20-2292, 2020 WL 1847704, at *5 (D.N.J. Apr. 13, 2020) ("The Court finds that Petitioner has standing in light of his request for emergent relief in the wake of a national health crisis."); *Umarbaev v. Lowe*, No. 20-413, 2020 WL 1814157, at *5 (M.D. Pa. Apr. 9, 2020) ("[T]he Court will examine his claim in the context of habeas corpus because Petitioner is seeking immediate release from confinement based upon the COVID-19 pandemic.").

building who have tested positive. ECF No. 34-2 at 12.  Across the entire facility, eighty-six staff members have tested positive for the virus (id.) and a combined ninety-five detainees and inmates have been quarantined, but do not display symptoms requiring heightened care (id. at 9).[5]  The Government contends that all efforts are being made to comply with the Centers for Disease Control and Prevention ("CDC") guidelines to protect against the spread of the virus, as described more fully below.

For an immigration detainee to state a claim for relief based on his medical needs under the Due Process Clause, he must show both that he has a sufficiently serious medical need and that jail officials have been deliberately indifferent to that need. *See, e.g.*, *Parkell v. Morgan*, 682 F. App'x 155, 159–60 (3d Cir. 2017); *King v. Cty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581–82 (3d Cir. 2003).  Petitioner's claim can only succeed if he can show that Respondents acted with deliberate indifference to that need, *i.e.*, that Respondents "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Neither a

---

[5] Petitioner has taken issue with the testing numbers reported by the Government in the declarations of ECCF Director Alfaro Ortiz and notes that news outlets have reported that ECCF has obtained a large amount of antibody tests to determine whether inmates and detainees have contracted COVID-19. ECF No. 30 at 2–3.  The Government responds that Director Ortiz's declarations have in fact noted the use of antibody testing to inform the jail's COVID-19 strategy, and further notes that these rapid antibody tests are supplemental to and different from the full laboratory tests which are also reported in the declarations. ECF No. 32 at 1–2; *see also* ECF No. 33 at 13 ("ECCF is in the process of testing its entire population using rapid testing antibody screening.  Rapid testing for antibodies is different from laboratory testing for COVID-19.  The expanded testing is part of ECCF's containment and quarantine strategy.  The testing is a supplementary screening tool done through a blood test to minimize the risk to healthcare providers.  ECCF is housing inmates and detainees based on the results of the antibody screening").  The Government has further provided a detailed explanation of ECCF's testing regimen from Dr. Lionel Anicette, the Medical Director of the jail. ECF No. 34-1.  The Court has considered all submissions on this matter and does not find that the antibody test results alter its analysis here.

detainee's subjective dissatisfaction nor his disagreement with the professional judgment of medical staff as to how best to deal with a medical issue are sufficient to establish deliberate indifference. *Hairston v. Dir. Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

Alternatively, Petitioner's claim can be construed as a challenge based on unconstitutional conditions of confinement.[6] *See Cristian A.R.*, No. 20-3600, at 17 ("Petitioners in this action claim that their continued detention in their current conditions of confinement violates due process. [T]his Court finds that Petitioners may challenge their conditions of confinement through a 28 U.S.C. § 2241 petition for writ of habeas corpus."). In determining whether a detainee's conditions of confinement violate his substantive due process rights, "the proper inquiry is whether those conditions amount to punishment of the detainee." *See Bell*, 441 U.S. at 535. The Third Circuit has arrived at a two-part test for this inquiry, under which the court "must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes." *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) (citing *Union Cty. Jail Inmates v. Di Buono*, 713 F.2d 984, 992 (3d Cir. 1983)).

---

[6] Petitioner relies on *Helling v. McKinney*, 509 U.S. 25 (1993), wherein the Supreme Court held that an inmate's exposure to secondhand smoke gave rise to an Eighth Amendment claim even though the inmate was asymptomatic because the harmful effects of the smoke were "sufficiently imminent." Id. at 35. Although *Helling* supports the theory that exposure to infectious diseases may give rise to an unconstitutional condition of confinement claim, it does not set forth the legal standard applicable herein to immigration detainees. "The legal standard for determining whether an immigration detainee, such as Petitioner, is subjected to a condition of confinement that amounts to punishment, is whether that condition is 'reasonably related to a legitimate government objective.'" *Jeferson V.G. v. Decker*, No. 20-3644, 2020 WL 1873018, at *6 (D.N.J. Apr. 15, 2020) (quoting *E.D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019)).

Petitioner has provided a declaration from an expert who disagrees with the effectiveness of ECCF's COVID-19 precautions and asserts that the jail has had issues with cleanliness and medical issues in the past. ECF No. 6-9 at 2–4. In the declaration, Dr. Jaimie Meyer states that "[t]he risk posed by infectious diseases in jails and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected." Id. at 2. Dr. Meyer highlights that detainees are unable to practice necessary hygiene measures, cannot social distance effectively, do not have access to adequate medical resources, and she also stresses that isolation is not an adequate preventative strategy. Id. at 2–3.

In response, the Government has submitted declarations outlining the steps ECCF has taken to alleviate the potential for exposure to COVID-19. These actions include educating detainees and staff about the virus, implementing CDC-recommended protocols on cleaning, increasing health screenings of both detainees and employees, providing detainees with unlimited access to soap and water and providing disinfectant upon request, providing surgical masks to symptomatic detainees, and establishing a separate quarantine area for infected prisoners and detainees. *See* ECF Nos. 13-1, 23-1, 28-1, 33-1, 34-2.[7] To treat individuals who do contract COVID-19, ECCF immediately transports those with moderately severe symptoms to a nearby hospital for treatment, quarantines detainees who are mildly symptomatic or who return from the hospital after treatment,

---

[7] Additional measures taken by ECCF to combat COVID-19 include: limiting movement between units, suspending non-essential programs involving outside volunteers and workers, obtaining COVID-19 testing supplies, providing nursing staff to conduct full health screenings of all new detainees, requiring that all new entrants be quarantined for fourteen days with twice daily temperature checks, limiting close inmate interaction, providing inmates with greater free telephone access, sanitizing food storage and preparation areas, canceling "roll calls" for guards, disallowing all visitors, implementing video conferencing for necessary case proceedings, ordering additional storage units to hold 1,008 Tyvek suits, 1,200 N95 masks, and 29,900 surgical masks, scheduling additional deliveries of soap every three days, and adjusting schedules to limit the number of detainees out of their cells at any time. ECF No. 34-2 at 4–11.

and places detainees who are in quarantine in cells that permit them to remain at least six feet apart. Id.

The Court finds that Petitioner is not entitled to release at this time as he has not shown that he is likely to succeed on the merits of his deliberate indifference to medical needs claim. While the Court is cognizant of the potential dangers COVID-19 poses to all persons, Petitioner at age twenty-two is not in an age group that is highly susceptible to the virus and does not have any pre-existing health conditions requiring unique medical care or special treatment. In addition, Petitioner's assertion regarding his cellmate placing him at greater risk of exposure has not been substantiated by the record. Petitioner's contentions and submissions from medical experts, while undoubtedly serious, are insufficient to establish Petitioner's claim, as he is required to show that Respondents are acting with deliberate indifference to his medical needs. Based on ECCF's actions detailed above and Petitioner's inability to point to a particularized medical condition he suffers from that is not being addressed by ECCF,[8] the Court cannot find that the jail has been deliberately indifferent to the danger that the virus poses specifically to Petitioner. *See Ousman D.*, 2020 WL 1847704, at *10 ("Bergen County Jail has taken affirmative, concrete, and reasonable

---

[8] While Petitioner directs the Court to the recent decision in *Rafael L.O.*, where the court found that certain detainees at ECCF demonstrated a likelihood of success on the merits of their conditions of confinement claims (ECF No. 24), that decision directly hinged on the fact that the detainees in that case were at heightened risk of severe injury from COVID-19 given their pre-existing health conditions. *Rafael L.O. v. Decker*, No. 20-3481, 2020 WL 1808843, at *9 (D.N.J. Apr. 9, 2020) ("Here, the potential injury to the Petitioners is grave in light of their health conditions."). Significantly, most courts that have released detainees on COVID-19 habeas petitions have focused on the detainees' underlying health conditions and advanced age. *See, e.g.*, *Jeferson V.G.*, 2020 WL 1873018, at *1 ("This decision should not be taken as signifying a result in any other individual case; rather, the court has given particular consideration to the petitioner's asthma."); *Basank v. Decker*, No. 20-2518, 2020 WL 1481503, at *1 (S.D.N.Y. Mar. 26, 2020) ("Each Petitioner suffers from chronic medical conditions, and faces an imminent risk of death or serious injury in immigration detention if exposed to COVID-19."); *Thakker v. Doll*, No. 20-480, 2020 WL 1671563, at *3 (M.D. Pa. Mar. 31, 2020) (Petitioners "are particularly vulnerable due to age and underlying medical conditions.").

efforts to address the pandemic. Petitioner's claim is thus denied."); *Jorge V. S. v. Green*, No. 20-3675, 2020 WL 1921936, at *3 (D.N.J. Apr. 21, 2020) (denying deliberate indifference to medical need claim as ECCF officials took more than adequate steps to alleviate the risks and dangers COVID-19 posed to detainee); *Emerson O. C.-S. v. Anderson*, No. 20-3774, 2020 WL 1933992, at *6 (D.N.J. Apr. 22, 2020) ("The record reflects that ECCF has taken concrete, affirmative steps in response to the pandemic despite Petitioner's claims to the contrary. . . In fact, [petitioner]'s declaration reflects changes that the county took to address the virus over a short time period."); *Jose D. M. v. Barr*, No. 20-403, 2020 WL 1969893, at *6 (D.N.J. Apr. 24, 2020) ("[Petitioner] expresses a general fear of contracting COVID-19. . . Although this concern is understandable, it is not sufficient to warrant habeas relief, particularly in light of the measures taken by [the facility] to prevent the spread of COVID-19."); *Cristian R. v. Decker*, No. 19-20861, 2020 WL 2029336, at *3 (D.N.J. Apr. 28, 2020) ("Based on these and the other significant steps that the jail has taken to alleviate virus exposure for detainees, it is clear that the facility has not been deliberately indifferent to Petitioner's needs.").

Similarly, Petitioner has not shown a likelihood of success on his substantive due process claim alleging unconstitutional conditions of confinement. As detailed above, Petitioner is properly detained at ECCF pursuant to 8 U.S.C. § 1226(a) and he has been afforded multiple bond hearings where he was denied release based on his past criminal activity and alleged gang ties (notwithstanding his challenges pending before the Court of Appeals for the Second Circuit and the Board of Immigration Appeals). The Government therefore has a legitimate interest in detaining Petitioner, and the Court does not find that the current conditions at ECCF are excessive in relation to the legitimate governmental purpose of maintaining Petitioner's lawful detention. *See Stevenson v. Carroll*, 495 F.3d 62, 67–68 (3d Cir. 2007) (quoting *Bell*, 441 U.S. at 530) ("Thus,

'if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees."). The current conditions at ECCF have been adapted in an attempt to deal with COVID-19 per CDC guidance and are thus rationally related to the legitimate government purpose of maintaining the detention of Petitioner, who has not demonstrated that he is particularly vulnerable to COVID-19 at present. *See Derron B. v. Tsoukaris*, No. 20-3679, 2020 WL 2079300, at *11 (D.N.J. Apr. 30, 2020) (finding condition of confinement claims brought by immigration detainees unlikely to succeed on the merits); *Carmen R. v. Decker*, No. 20-3875, 2020 WL 2029337, at *12 (D.N.J. Apr. 28, 2020) ("The Court finds that [the jail]'s current measures to combat the spread of COVID-19 in relation to this specific Petitioner's purported medical conditions, as discussed at length above, are not excessive in relation to the government's legitimate purpose. Thus, the Court concludes that Petitioner has not established a likelihood of success on the merits of her punitive conditions of confinement claim."); *Graham v. Decker*, No. 20-2423, 2020 WL 1847568, at *7 (S.D.N.Y. Apr. 13, 2020) ("The record does not include evidence that tends to show [petitioner]'s conditions of confinement, when viewed with his individualized health circumstances, constitute punishment. The Court therefore concludes that he has not demonstrated a likelihood of success.").

Given that Petitioner has not demonstrated that his age or health conditions place him at a heightened risk of complications arising from COVID-19 and that ECCF has taken efforts to address the virus, the Court concludes that Petitioner has not demonstrated that he will suffer irreparable harm absent immediate release. *See Graham*, 2020 WL 1847568, at *5–6; *see also Brown v. U.S. Dep't of Homeland Security*, No. 20-119, 2020 WL 1911506, at *8 (M.D. Pa. Apr. 20, 2020) ("The requirements of irreparable harm and likelihood of success on the merits are

16

correlative: that is, the weaker the merits showing, the more will be required on the showing of irreparable harm, and vice versa."). As Petitioner has failed to meet his burden with respect to the likelihood of success on the merits and irreparable harm, the Court need not address the two remaining factors of harm to the nonmoving party and the public interest. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

This decision should not be read to indicate the likely result in any other case as it is based entirely on the Court's analysis of Petitioner's specific background, medical history, and current circumstances.

**III. CONCLUSION**

For the reasons set forth above, Petitioner's motions for a temporary restraining order and an order to show cause (ECF Nos. 3, 5) are **DENIED WITHOUT PREJUDICE**. An appropriate Order accompanies this Opinion.

**DATE**: May 8, 2020

_____
**Claire C. Cecchi, U.S.D.J.**